CASE 24—INDICTMENT FOR BIGAMY—FEB. 4.

## Commonwealth v. Jackson.

APPEAL FROM LEWIS CIRCUIT COURT.

1. IN PROSECUTIONS FOR BIGAMY, THE MARRIAGE OF THE DEFENDANT MAY BE ESTABLISHED by proof of conduct, declarations, cohabitation, &c. See in opinion a review of the English and American authorities on this question.

*How the jury should be instructed on such proof.*—When the declarations of the prisoner and the fact that he has recognized and cohabited with the woman alleged to be his wife are alone relied upon, the jury should still be told that this is only evidence tending to prove an actual marriage, and that it is for them to decide whether the facts proven are sufficient to warrant them in finding that the prisoner was in fact married to the alleged wife, and unless they so believe they should acquit, although they may believe he recognized and cohabited with her as his wife.

2. *In this case the circuit court erroneously decided* that proof of the declarations and conduct of the defendant, admitting his marriage, and living with and recognizing the woman as his wife, were not sufficient to warrant the jury in finding a verdict against him, and erroneously gave the jury a peremptory instruction to find the defendant not guilty.

THOS. E. MOSS, Attorney General, }
A. E. COLE, . . . . . . . . }  . . . For Appellant,

CITED

General Statutes, chap. 29, art. 4, sec. 10.

1 Mar. 290, Kibby v. Rucker.

Commonwealth v. Jackson.

2 Greenleaf's Ev. sec. 49.      2 Fairf. 391, Harris's case.
7 Greenleaf, Cayford's case.   2 Va. Ca. 95.
4 McCord, 255, State v. Britton.
3 Richardson's Rep. 434, State v. Hilton.
8 Serg. & R. 159, Forney v. Hallacher.
2 Scam. 231, Jackson v. The People.
16 Car. & Kir. 167, Rex v. Simmons.
19 Maine, 155, State v. Hodgkins.
11 Ga. 53, Cook v. State.
14 Ala. 546, Cameron v. State.
16 Ohio, 173, Wolverton v. State.

WALKER & JOHNSON, . . . . . . . . . For Appellee,

CITED

3 Greenleaf on Ev., sec. 204.
4 Barrow, 2057.   ·   3 Arch. Cr. Pl. 476.
5 J. J. Mar. 491, Sneed v. Ewing and wife.
5 Mich. 409, People v. Lambert.
20 Ohio, Shaffer v. State.

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

The appellee was indicted in the Lewis Circuit Court for the crime of bigamy, and was tried by a jury, and under a peremptory instruction of the court was found not guilty, and the Attorney General prosecutes this appeal under section 331 of the Criminal Code in order to obtain the opinion of this court upon the point decided adversely to the commonwealth by the circuit court.

The only evidence of a marriage of the appellee prior to that alleged to be polygamous consisted of evidence of his declarations that another woman was his wife, and of the fact that he had lived with, recognized, introduced, and represented her as his wife.

One witness testified that appellee came to Maysville as early as September, 1874, and engaged to sell sewing machines for him; that he then said he was a married man, and that his wife was in Higginsport, in the state of Ohio; that he (witness) subsequently let the appellee have money with which he said

he wanted to bring his wife from Higginsport to Maysville; that he brought a lady to Maysville, whom he introduced to witness as his wife, and boarded with her in a respectable family; that the lady gave birth to a child while in Maysville, and that the appellee told him it was his child, and that his wife had given birth to another child which died in Ohio, the funeral expenses of which the witness paid at appellee's request.

Another witness testified that two or three weeks before the alleged second marriage the appellee applied to him for a horse and buggy to take his wife to the railroad depot, saying she was going to Louisville; and a third witness swore that appellee lived with the woman that came from Higginsport, and claimed that she was his wife.

The circuit judge seems to have been of the opinion that an indictment for bigamy could not be maintained without proof of the fact of two marriages, either by record evidence or by the testimony of one or more witnesses who were present at the solemnization of the marriage rites; or, in other words, that the declarations and conduct of the defendant, admitting his marriage and living with and recognizing the woman as his wife, were not sufficient to warrant the jury in finding a verdict against him.

This is a subject about which there is irreconcilable conflict in the authorities. In Massachusetts, New York, and Connecticut, and perhaps in some other states, it has been held that in prosecutions for bigamy an actual marriage of the prisoner must be proven, and that neither cohabitation, reputation, nor the confessions of the prisoner are admissible for that purpose, or, if admissible, are not of themselves sufficient to warrant conviction. (The Commonwealth v. Littlejohn and Barbarick, 15 Mass. 163; Roswell's case, 6 Conn. 446; The People v. Humphrey, 7 Johns. 314.)

On the other hand, it has been held in South Carolina, Virginia, Georgia, Alabama, Ohio, Pennsylvania, Maine, and Illi-

nois, that in prosecutions for bigamy the confessions of the prisoner deliberately made are admissible as evidence to prove marriage in fact, and in some of those states that such confessions are of themselves sufficient to authorize the jury to convict. (Britton's case, 4 McCord, 256; The State v. Hilton, 3 Richardson, 434; Warner v. The Commonwealth, 2 Virginia Cases, 95; Cook v. The State, 11 Ga. 53; Cameron & Cook v. The State, 14 Ala. 546; Wolverton v. The State, 16 Ohio, 173; Murtagh's case, 1 Ashmead, 272; Forney v. Hallacher, 8 Serg. & Rawle, 159; Cayford's case, 7 Greenl. 57; Harris's case, 2 Fairf., 11 Me. 391; State v. Hodgkins, 19 Me. 155; Jackson v. The People, 2 Scam. 231.)

These were not all prosecutions for bigamy, but they were all cases in which the prosecution could only be made out by proof of a marriage in fact, and the same principle which would admit evidence of the admissions, confessions, or conduct of the prisoner in such of them as were not for bigamy, would also authorize its admission in prosecutions for that crime.

The American cases in which it has been held that evidence of such declarations, confessions, and conduct is not admissible, or, if admissible, is not of itself sufficient to warrant conviction, seem to rest on the authority of Morris v. Miller (Burr. 2056) and Birt v. Barlow (Douglas, 171).

These were actions for *crim. con.* in which the plaintiffs attempted to establish their marriages by giving in evidence their own declarations, and proving their recognition of and cohabitation with the women alleged to be their wives.

In the former case Lord Mansfield said: "There must be evidence of a marriage in fact; acknowledgment—*i.e.,* acknowledgment of the husband by the wife—cohabitation, and reputation are not sufficient in *this action.*" And he gives his reasons for so holding. "It shall not depend," said he, "upon the mere reputation of a marriage which arises from the conduct or

declarations of the *plaintiff himself.*" Again he says : "No inconvenience can possibly arise from this determination. But inconvenience might arise from a contrary decision which might render persons liable to actions founded on evidence made by the persons themselves who should bring the actions." And twelve years later, in deciding the case of Birt v. Barlow, he gave the same reasons for a like decision.

And this additional reason seems to us to be entitled to considerable weight in support of the rule announced by Lord Mansfield in those cases, and by this court in the case of Kibby v. Rucker (1 A. K. Mar. 290), as applicable to actions for *crim. con.* In such cases the plaintiff knows when, where, and by whom he was married, and at least some of the persons who were witnesses of the fact, and generally has it in his power to offer direct and positive proof. But the case is often quite otherwise with the government in prosecutions for bigamy. The prosecuting officer must often be wholly ignorant of the time and place of the prisoner's first marriage, of the names and residence of those present at its consummation, and the avenues of information will generally be closed to him, especially when the first marriage took place, as is generally the case with bigamists, in some other state or country. Another difficulty in the way of the government under the rule that the first marriage must be established by record evidence or by the testimony of one or more witnesses present at the marriage, and which does not exist in actions for *crim. con.*, is, that the government can not read the depositions of witnesses, and may be unable to procure the attendance of those residing out of the state, while the plaintiff in *crim. con.* may procure and read depositions to prove the fact of his marriage.

But Lord Mansfield did not say in Morris v. Miller, as some have supposed, that a prisoner's words and conduct could not be given in evidence against him to prove, in a prosecution for bigamy, the fact of his having been previously married, or

that such evidence would not of itself authorize a conviction. He said, it is true, that "in a prosecution for bigamy a marriage in fact must be proved;" and this we do not for a moment doubt is now and has always been the law; but Lord Mansfield goes on to say, "We do not at present define what may or may not be evidence of a marriage in fact," and thus left open the very question which he has been quoted as deciding, which, as already stated, seems to be the foundation upon which the American cases rest which hold that direct and positive proof is required. That Lord Mansfield did not mean to decide that a marriage in fact could not be proved by evidence of the declarations and conduct of the prisoner is not only clear from the case in which he has been supposed to have made that decision, but is further shown by his decision in Mary Norwood's case (1 East's Cr. Law, 337), where he, with the concurrence of Lord Chief Justice Parker and Justices Smythe, Bathurst, and Parrot, determined that seven years' cohabitation and several admissions by the prisoner that a person was her husband by calling him by that appellation was not only competent, but sufficient evidence to prove a marriage in fact.

Mr. Phillips, in his work on Evidence (vol. 2, pp. 210–12), in commenting on the case of Morris v. Miller, says: "This decision does not warrant the conclusion that a distinct and full acknowledgment made by the defendant himself will not be evidence of the fact as against him, and sufficient to dispense with more formal and strict proof."

In Truman's case (1 East, 470) it was decided that his conviction of bigamy obtained upon his confession of marriage was proper.

In Cook v. The State, Justice Nesbit, in delivering the opinion of the Supreme Court of Georgia, said: "Acknowledgments, cohabitation, repute, etc., in ordinary civil cases, prove marriage; but it is said in criminal cases, as in prosecutions for bigamy and adultery, a marriage in fact must be

proved, . . . and that the admissions of the defendant are not competent. As a general rule, the confessions of a party, freely and solemnly made, are the highest evidence. So reasonable and well settled is this rule that the exceptions to it, to be sustained, ought to rest upon the most unassailable ground." And again he says it can not be presumed that the prisoner made confessions contrary to the truth in order to shield himself from prosecution for adultery upon the assumption that he was, in fact, living in a state of adultery. " Such assumption a court has no right to make;" and we may add that, a request coming from one charged with bigamy, that the court shall assume, in order to acquit him of one crime, that he is guilty of another, and has likewise imposed a kept mistress upon society as his wife by falsely representing and introducing her as such, is not entitled to be received with any especial favor.

Mr. Justice White, in delivering the opinion of the Supreme Court of Virginia in Warner v. The Commonwealth, said: " In all criminal prosecutions as well as civil actions the confessions of a party, his admissions, and acts amounting to confessions or admissions, are not only admissible, but often the strongest evidence against him, and not unfrequently supply the place of evidence of a higher character which would otherwise be called for;" and this is equally true in a prosecution for bigamy as in every other case. Why should it not be? Is there any thing in that crime or in its punishment which ought to give to it a distinct code of the law of evidence, or to give to those accused of it privileges not extended to those accused of other crimes?

Mr. Greenleaf says (2 Greenleaf on Evidence, sec. 49): "Any recognition of a person standing in a given relation to others is *prima facie* evidence against the person making such recognition that such relation exists; and if the defendant has seriously and solemnly admitted the marriages, it will be re-

ceived as sufficient proof of the fact." If a defendant indicted for adultery can be convicted upon evidence of his admission that the woman with whom the crime was committed was the wife of another, without any other evidence of a marriage in fact, *a fortiori* one indicted for bigamy may be convicted on his deliberate admission of his own marriage, or that the alleged wife was such in fact, when that admission is coupled with evidence of recognition, cohabitation, and provision for her as a wife, and acknowledgment that he is the father of her children.

Again, Mr. Greenleaf says the marriage of one indicted for bigamy may be proved "by the deliberate admission of the prisoner himself." (Greenleaf's Evidence, vol. 3, sec. 204.)

Mr. Chitty, in a note to the title "Indictments for Bigamy or Polygamy," says: "Any evidence seems to be sufficient which will convince the jury that an actual marriage was completed." (Chitty's Crim. Law, 472.)

In Regina v. Upton (1 Car. & Kir. 165) it was held that on an indictment for bigamy or adultery the prisoner's deliberate declaration that he was married to the alleged wife was sufficient evidence of marriage.

From this notice of English and American authorities it seems to us that neither the common law of England, as adopted in this country, or the American common law, as recognized by the courts of the various states, requires us to hold that one charged with the crime of bigamy can not be convicted upon clear and satisfactory proof of his declarations that the alleged wife is legally such when those declarations are coupled with evidence of cohabitation with her, and her introduction by him into a community where he resides as his wife. We think the safety, the happiness, and the honor of families, the good order of society, the preservation of the public morals, and a due regard to public decency and individual virtue, demand that the rules of the law should furnish every facility for the punishment

of crime which a proper regard for the security of the innocent will allow.

It is difficult to perceive any reason for discriminating between admissions to prove a marriage and other facts essential to constitute the legal guilt of the accused; there can be no more danger of doing injustice in receiving such evidence in the class of cases under consideration than in any other. Where the declarations of the prisoner and the fact that he has recognized and cohabited with the woman alleged to be his wife are alone relied upon the jury should still be told that this is only evidence tending to prove an actual marriage, and that it is for them to decide whether the facts proven are sufficient to warrant them in finding that the prisoner was in fact married to the alleged wife, and unless they so believe they should acquit, although they may believe he recognized and cohabited with her as his wife. This will place the declarations of one indicted for a crime in which proof of actual marriage is necessary to make out his guilt upon the same legal footing with those charged with other crimes, and will not give comparative immunity to this detestable crime by obstructing the path of the prosecutor with a rule of evidence which it is believed would render conviction impossible in a large majority of such cases where the moral evidence of guilt is conclusive, and where a conviction could be had by simply applying to that class of cases the same rules of evidence applied to other crimes, subjecting the offender to like punishment.

We are therefore of the opinion that the court erred in giving to the jury a peremptory instruction to find the appellee not guilty.