## Frazier (et al., Appellant), v. Oil Chemical Co., Inc.

Argued January 16, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Norman Shigon,* for appellant.

*Maurice Freedman,* with him *Edward F. Muller, Jr., Robert H. Arronson,* and *Herbert H. Hadra,* for appellee.

*Edward H. P. Fronefield,* with him *Joseph T. Labrum, Jr., William F. Keating,* and *Lutz, Fronefield, Warner & Bryant,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 20, 1962:

This appeal presents an interesting, albeit a narrow, issue: Do children born out of wedlock have a right to share in the recovery of damages for the death of their father in an action instituted under the survival and wrongful death statutes?

As personal representative of the estate of Claude Frazier, deceased, Alberta Frazier instituted an action,[1] under the survival statute[2] and the wrongful

---

[1] Pa. R. C. P. No. 213(e) provides: "A cause of action for the wrongful death of a decedent and a cause of action for his injuries which survives his death may be enforced in *one* action . . . ."

[2] Fiduciaries Act of April 18, 1949, P. L. 512, §601 (20 PS §320.601) provides: "All causes of action . . . [except libel and slander actions] . . . shall survive the death of the plaintiff . . . ." Section 603 of that Act (20 PS §320.603) provides: "An action or proceeding to enforce any right or liability which survives a decedent may be brought by . . . his personal representative . . . as though the decedent were alive."

death statute,[3] in the Court of Common Pleas of Delaware County against the Oil Chemical Co., Inc. for the recovery of damages arising from the death of Claude Frazier. As mother and natural guardian of Toni Frazier and Claudette Frazier, Mary Jane Frazier (appellant) petitioned the court to intervene in that action. The ground assigned for intervention was that Toni Frazier and Claudette Frazier are the illegitimate children of Claude Frazier, deceased, and that they "would be entitled to their proportionate share as children of, any damages recoverable for his death."[4] After a rule was granted to show cause why such intervention should not be allowed and answers filed,[5] the court below entered an order discharging the rule and refusing the intervention. From that order, these appeals were taken.

Our initial consideration shall be given to the claim for intervention in this action insofar as the survival statute is concerned. In *Fisher v. Dye,* 386 Pa. 141, 145, 125 A. 2d 472, Chief Justice STERN stated: ". . . under the Survival Act the damages are measured by the pecuniary loss to the decedent, and *whatever is recovered forms part of the decedent's estate*: [citing cases]." (Emphasis supplied). These children seek to share in the recovery of damages for the death of their father; however, their right to share *under the survival statute* must be determined in a forum other than the common pleas court, i.e., the orphans' court. Their right to share in the recovery of damages under the survival statute must await two events: (a) the *actual* recovery of damages in the action and (b) the institu-

---

[3] Act of April 15, 1851, P. L. 669, §19, 12 PS §1601; Act of April 26, 1855, P. L. 309, §1, as amended, 12 PS §1602.

[4] Paragraph 2 of petition to intervene.

[5] The personal representative's answer *first* denied Toni and Claudette Frazier were the children of decedent but *later* stated she was without knowledge or information and demanded proof. For the purpose of these appeals, we will consider these children as decedent's children born out of wedlock.

tion of proceedings in the orphans' court to determine who are entitled to share in the damages recovered, since such damages would be part of the *estate* of the father, and distributable as such. Therefore, the question raised in this proceeding is premature: *Fisher v. Dye,* supra; *Burns v. Goldberg,* 210 F. 2d 646.

Our attention next is directed to the determination of the right, if any, of such children to share in any damages recoverable in the wrongful death action.

At common law there was no right of action to recover damages for the wrongful death of a near relative in Pennsylvania.[6] The right of action for a death caused by a wrongful act arises solely by statute. Section 19 of the Act of 1851[7] provides: "Whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured during his or her life, the widow of any such deceased, or if there be no widow, the personal representatives may maintain an action for and recover damages for the death thus occasioned."[8] Section 1 of the Act of 1855,[9] as amended, in pertinent part, provides: "The persons entitled to recover damages for any injuries causing death shall be the husband, widow, *children,* or parents of the deceased, and no other relatives; . . . and *the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy . . . .*"[10] (Emphasis supplied). The sum recovered under the wrongful death statute, unlike the

---

[6] *McFadden v. May,* 325 Pa. 145, 147, 189 A. 483; *Kaczorowski v. Kalkosinski,* 321 Pa. 438, 441, 184 A. 663; *Darbrinsky v. The Pennsylvania Co.,* 248 Pa. 503, 507, 94 A. 269.

[7] Act of 1851, supra.

[8] Pa. R. C. P. No. 2202 provides that a wrongful death action shall be brought by the personal representative.

[9] Act of 1855, supra.

[10] Pa. R. C. P. Nos. 2201-2205 do not change the law relating to those for whose benefit damages are recoverable in wrongful death actions.

sum recovered under the survival statute, does not become a part of the decedent's estate but it is compensation to the statutorily designated persons for the wrongful death and the share which such persons take is determined by the intestate law of the Commonwealth.

If these children born out of wedlock have any right it must arise from the terms and provisions of the Act of 1855, as amended. The Acts of 1851 and 1855 altered the common law and created a new cause of action and, in their construction and interpretation, we must bear in mind that they are "not to be extended beyond their obvious import": *Strain v. Kern,* 277 Pa. 209, 212, 120 A. 818; *Regan v. Davis,* 290 Pa. 167, 172, 138 A. 751; *Kaczorowski v. Kalkosinski,* supra; *Potter Title & Trust Co. v. Petcoff,* 122 Pa. Superior Ct. 540, 544, 186 A. 320; *Shallcross v. North Branch-Sedgwick Building and Loan Association,* 123 Pa. Superior Ct. 593, 595, 187 A. 819. If these children are to take under these statutes they must not only bring themselves within the legislatively employed word "children" but must show their right to share in their father's personal estate under the intestate laws.

When the legislature passed the Act of 1855 (April 26, 1855), illegitimate children could not inherit even from their mother. The legislature *on the very next day* passed a statute (Act of April 27, 1855, P. L. 368) which "did not legitimate illegitimates but gave to the mother and illegitimate children the capacity to inherit from each other only": *Goughnour v. Zimmerman,* 237 Pa. 599, 601, 85 A. 874. In referring to the situation which existed prior to the Act of April 27, 1855, i.e., at the time the wrongful death statute was passed, Justice Agnew in *Opdyke's Appeal,* 49 Pa. 373, stated (p. 378): "The condition of the bastard is thus [by the Act of April 27, 1855] changed. Before, he was *filius nullius,* now he is next of kin and heir; before, he had no ca-

pacity or ability, now he has capacity to take or inherit. He is the son of his mother and she is his mother, so that now each may take or inherit from the other". The status of illegitimate children at the time of the passage of the wrongful death statute is enlightening in ascertaining the legislative intent as to the inclusion or exclusion of illegitimate children within the word "children".

The Pennsylvania decision most apposite to the case at bar is *Molz v. Hansell,* 115 Pa. Superior Ct. 338, 175 A. 880. The facts in *Molz* were summarized by Judge KELLER in *Kelly v. Ochiltree Electric Company,* 140 Pa. Superior Ct. 265, 274, 275, 14 A. 2d 351: ". . . an employee was killed in the course of his employment in such circumstances as to make a third person liable in damages. He left a legitimate daughter and two illegitimate children who were living with him in his household, along with their mother, and who were entitled to compensation. . . . The negligent third person paid the mother of the illegitimate children $4000, thinking her the legal wife of the deceased employee—as she supposed herself to be. Subsequently the legitimate daughter filed a bill in equity to require this $4000 to be paid to her. It was dismissed without prejudice to the rights of the parties so far as compensation was concerned, on payment of $2000 to the legitimate daughter. Compensation . . . was awarded the legitimate daughter, and . . . on behalf of the illegitimate children. At the same time the board authorized the employer to deduct the full amount of $1670, by way of subrogation, from the award to the legitimate daughter, and $2330 from the awards in behalf of the illegitimate children. On appeal to the common pleas that court sustained the exceptions as respects the subrogation awarded the employer on behalf of the illegitimate children, and entered judgment against the employer for the full amount of the award to them." The Superior Court in *Molz*

84

affirmed the judgment of the court below, stating, inter alia (pp. 340, 341, 342) : "Upon [the employee's] death, by the negligence of [the third person], a purely statutory right of action accrued in accordance with [the wrongful death statute]. . . . By 'widow' is meant lawful widow, and by 'children' is meant legitimate children : [citing cases]. Neither [the employee's widow by the invalid marriage], nor her children, could take any of [the employee's] personal estate, in case of his death intestate. . . . The illegitimate children had no legal claim against [the third person] for damages because of the death of their father, the employee. The sole right of action under the law was in the legitimate daughter. . . . Under the law the illegitimate children were entitled to no part of these damages. . . . The subrogation rights . . . were not increased by the fact that [the legitimate daughter], in the settlement of her equity suit, chose to divide the damages legally payable to her with the illegitimate children of her father." *Molz* clearly repudiates appellant's present contention.

Appellant urges that our courts have permitted recovery by illegitimate children under the provisions of The Pennsylvania Workmen's Compensation Act[11] and, by analogy thereto, illegitimate children should be permitted to recover under the wrongful death statute. A comparison of the language of both statutes reveals the fallacy of this argument. Under the Workmen's Compensation Act it is provided: "If members of decedent's household at the time of his death, the terms 'child' and 'children' shall include . . . *children to whom he stood in loco parentis. . . .*" (Emphasis supplied). Under the wrongful death statute, the word "children" stands undefined except insofar as it is provided that they shall take such portion of the recovered damages as they would be entitled to take of the decedent's personal estate in the event of an intestacy. Furthermore, under

[11] Act of June 2, 1915, P. L. 736, §307, as amended, 77 PS §562.

the Workmen's Compensation Act, an illegitimate child can receive compensation only upon proof of two co-existing conditions: (a) that the deceased employee stood to the child in loco parentis; (b) that the child was a member of the deceased employee's household at the time of his death: *Cairgle v. American R. and S.S. Corp.*, 366 Pa. 249, 255, 77 A. 2d 439; *Kransky v. Glen Alden Coal Co.*, 354 Pa. 425, 426, 47 A. 2d 645; *Smrekar v. Jones & Laughlin Steel Corp.*, 137 Pa. Superior Ct. 183, 188, 8 A. 2d 461; *Balanti v. Stineman Coal & Coke Co.*, 131 Pa. Superior Ct. 344, 346, 347, 200 A. 236; *Gierak v. Lehigh & Wilkes-Barre Coal Co.*, 101 Pa. Superior Ct. 397. In *Balanti,* supra, Judge KELLER stated (pp. 346, 347): "The term 'child' as used in [the Workmen's Compensation Act] . . . refers to a legitimate child of the deceased employee, unless the child is a member of his household at the time of his death and thus dependent on him, as in loco parentis: [citing cases]. . . . As Lucy Balanti was not a member of his household and had not been for over thirteen years prior to his death, in order to sustain an award she had to prove that she was a legitimate child, that is, that her father and mother were married to each other when she was born. This the evidence fails to show."

When the words "child" or "children" appear in a statute, in the absence of any qualifying expression, such words are to be interpreted in the sense in which such words are generally used in both legal and common parlance, i.e., as referring to a child or children begotten in lawful wedlock, whether born before or after the death of the father, or begotten out of wedlock but legitimatized by the subsequent marriage of the natural parents.[12] In *Overseers of the Poor v. Over-*

---

[12] Other jurisdictions are in accord: *Miller v. Industrial Commission*, 138 N.E. 2d 672, 674, 165 Ohio St. 584; *Aetna Life Ins. Co., v. McMillan*, 171 F. Supp. 111, 115; *Bowen v. N. Y. Central R. Co.*, 179 F. Supp. 225; *Bonewit v. Weber*, 120 N.E. 2d 738, 95 Ohio App.

*seers of the Poor,* 176 Pa. 116, 121, 34 A. 351, this Court said: "In the absence of some qualifying expression, . . . the word 'child' in legislative enactments, as in legal parlance generally, means only and exclusively a legitimate child. It is used to denote a legitimate descendant in the first degree". See: *Wettach v. Horn,* 201 Pa. 201, 204, 50 A. 1001; *Smrekar v. Jones & Laughlin Steel Corp.,* supra, p. 188. In the absence of any qualifying expression, the word "children" in the wrongful death statute means legitimate children and does not include illegitimate children.

Any doubt as to the legislative intent to limit the word "children" to children of legitimate birth is resolved by the provision in the statute that ". . . the

428; *Tillery v. Tillery,* 46 So. 582, 155 Ala. 495; *Brinkley v. Dixie Construction Co.,* 54 S.E. 2d 267, 205 Ga. 415, 416; *Estate of Cady,* 257 App. Div., 129, 130, 12 N. Y. S. 2d 750, aff'd. 281 N. Y. 688, 23 N.E. 2d 18; *In re Estate of Krager,* 93 N.W. 2d 137, 253 Minn. 542; *Jung v. St. Paul Fire Dept. Relief Ass'n.,* 27 N.W. 2d 151, 223 Minn. 402; *Hiser v. Davis,* 234 N. Y. 300, 137 N.E. 596; *Town of Plymouth v. Hey,* 189 N.E. 100, 285 Mass. 357; *In re Dragoni,* 79 P. 2d 465, 53 Wyo. 143; *Hall v. Fivecoat,* 38 N.E. 2d 905; *Jackson v. Lindlom,* 84 So. 2d 101 (La. App.); *Case of Elizabeth Langsdon,* 15 L.T.O.S., 521; *Dickinson v. Northeastern,* 2 Hurl. & Colt 735, 159 Rep. 304. In *Wilkinson v. Adam,* 1 Ves. & Bea. 422, 462, 35 Eng. Rep. 179, Lord Eldon stated: "The rule cannot be stated too broadly that the description, 'child, son, issue,' every word of that species, must be taken prima facie to mean legitimate child, son, issue". Contra: *Hammond v. Pennsylvania R. Co.,* 156 A. 2d 689, 31 N. J. 244 (illegitimate children are "children" within meaning of Federal Employers Liability Act); *Morgan v. Susino Constr. Co.,* 33 A. 2d 607, 130 N. J. L. 418 (illegitimate children are within term "dependents" in workmen's compensation statute); *Middleton v. Luckenbach S. S. Co.,* 70 F. 2d 326, 328 ("child" in statute stating for whose benefit suit may be brought to recover for death by wrongful act at sea includes illegitimate children); *LaBlue v. Specker,* 100 N.W. 2d 445, 358 Mich. 558 (a posthumous illegitimate entitled to recover damages for death of natural father caused by illegal sale of intoxicants to the father).

sum recovered [in the wrongful death action] shall go to [the children] in the proportion they would take his or her personal estate in case of intestacy. . . ." As we have pointed out previously in this opinion, an illegitimate child at common law had no rights of inheritance, even from his mother, nor could anyone but his own lawful descendants inherit from him. Under the present state of our law of inheritance, while an illegitimate child is the child of his mother for all purposes of inheritance,[13] such child has no right of inheritance from or through his father.[14] Under the Intestate Act of 1947 it is provided: "Child of mother. For purposes of descent by, from and through an illegitimate, he shall be considered the child of his mother *but not of his father.*" (Emphasis supplied). Thus, it is crystal clear that, even though these illegitimate children were permitted to intervene in this action, they could not share in the damages recovered by reason of the explicit language in the statute, a legislative mandate binding upon us.

An examination of the wrongful death statute renders clear the legislative intent that only those children of a decedent who have rights of inheritance under the intestate law are within the term "children" as used in the wrongful death statute. Legislation subsequent to the passage of the Act of 1855 has granted rights of inheritance in case of intestacy to an illegitimate child in the personal estate of the mother of such child and thus given such child a status under the wrongful death

---

[13] *Taylor Estate,* 357 Pa. 120, 123, 53 A. 2d 136; *Patterson's Estate,* 282 Pa. 396, 128 A. 100; *Com. v. Mackey,* 222 Pa. 613, 615-616, 72 A. 250; *McFarlin's Estate,* 267 Pa. 510, 514, 111 A. 444; *Woltemate's Appeal,* 86 Pa. 219, 220; *Opdyke's Appeal,* 49 Pa. 373.

[14] *Manfredi's Estate,* 399 Pa. 285, 159 A. 2d 697; *Mayers v. Ewing,* 102 F. Supp. 201; *Wharton's Estate,* 218 Pa. 296, 298, 67 A. 414; *Craig's Estate,* 273 Pa. 530, 117 A. 221.

statute,[15] but the legislature has not seen fit to grant such child rights of inheritance in case of intestacy in the personal estate of the father. The wisdom of such distinction is a matter for the legislature not the courts.

Lastly, it is well settled that to recover under the wrongful death statute one must not only stand in the statutory family relationship to the deceased but must show that, by reason of the wrongful death, he or she has suffered the loss of a reasonable expectation of pecuniary advantage: *Gaydos v. Domabyl,* 301 Pa. 523, 152 A. 549. In *Gaydos,* supra, the Court stated (p. 530): "Pecuniary loss has been defined to be a destruction of a reasonable expectation of pecuniary advantage from the deceased. It is not a matter of guess or conjecture, but must be grounded on reasonably continuous past acts or conduct of the deceased: [citing cases]. The reasonable expectation of pecuniary advantage to one standing in the family relation may be shown in many ways . . .; to be reasonable, the services and gifts must have been rendered with a frequency that begets an anticipation of their continuance; occasional gifts and services are not sufficient on which to ground a pecuniary loss: . . . ." Neither expressly nor by implication has the petitioner averred that these illegitimate children have suffered the loss of a reasonable expectation of a pecuniary advantage by reason of their father's death for which they would be entitled to recover in this action.

---

[15] As appellee points out in its briefs: "While text writers point to instances of judicial approval of the right to include an illegitimate child as a beneficiary in an action for wrongful death of the mother or vice versa, such decisions are not applicable here. The theory underlying those cases is that where there are laws allowing inheritance between a mother and an illegitimate child, it is presumed that the legislature intended to allow recovery of wrongful death benefits by or for a mother."

Appellant urges that we exhibit, in line with a so-called "modern tendency", a more liberal attitude toward illegitimate children and grant them the status to join in this action for the wrongful death of their father. Our duty, however, is to construe the statute from which springs the right or cause of action for wrongful death and such statute clearly excludes illegitimate children from the class of those to whom the legislature has given the right of action for wrongful death. Any correction of this situation and an equation of the rights of illegitimates with those of legitimates must come not from this Court but from the legislature.

Under the provisions of the wrongful death statute these children of illegitimate birth have no standing to recover damages for the death of their father and the court below very properly refused to permit their intervention in this action.

Order affirmed. Costs on appellant.

Mr. Chief Justice BELL concurs in the result.

Mr. Justice MUSMANNO dissents.